**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**KARDINIA M. A.,**

**Plaintiff,**

**vs.** **CIV NO. 1:25-cv-00669-KRS**

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff Kardinia M. A.'s ("Plaintiff") Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, ("Motion"), (Doc. 11), dated October 10, 2025, challenging the determination of the Commissioner of the Social Security Administration ("SSA" or the "Commissioner") that Plaintiff is not entitled to disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–83f. The Commissioner responded to Plaintiff's Motion on February 12, 2026, (Doc. 17), and Plaintiff filed a reply on February 26, 2026, (Doc. 18.) Plaintiff filed a Notice of Completion of Briefing that same day. (Doc. 19.)

The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered the parties' filings and has meticulously reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in his decision and will therefore **GRANT** Plaintiff's Motion and **REMAND** this case back to the SSA for proceedings consistent with this

opinion.

## I. PROCEDURAL POSTURE

On October 24, 2022, Plaintiff filed her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Record ("AR") at 19, 100-01, 153-55.)[1] Plaintiff alleged an onset date of July 19, 2020, at 29 years of age, due to: depressive, bipolar and related disorders, as well as anxiety and obsessive-compulsive disorders. (*Id.* at 19, 100-01, 153-55.) Plaintiff's date last insured, the date through which she could be eligible to receive disability insurance benefits, was December 31, 2024. (*Id.* at 21, 102.)

Plaintiff's application was denied at the initial level on April 11, 2023, (*id.* at 21, 157-63), and upon reconsideration on August 28, 2023, (*id.* at 21, 175-90). Plaintiff requested a hearing on October 26, 2023, (*id.* at 21, 191-96), which ALJ Michael Sauve ("ALJ Sauve" or "the ALJ") conducted via videoconference on August 23, 2024, (*id.* at 21, 40-67). Plaintiff was represented by counsel and testified at the hearing, (*id.* at 11, 40-41, 47-59), as did Vocational Expert Barbara Lewis ("VE"), (*id.* at 21, 40-41, 59-66).

On September 10, 2024, the ALJ issued an unfavorable decision. (AR at 16-39.) On May 16, 2025, the Appeals Council denied Plaintiff's request for review, (*id.* at 1-7), making the ALJ's decision the Commissioner's final decision. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On July 15, 2025, Plaintiff timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## II. LEGAL STANDARDS

1 Document 10 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)).

"Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted). While an ALJ

need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). Hence, the ALJ must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

**B. Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Act devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of

presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

The claimant has the burden of proof in the first four steps of the analysis, including that based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

## III. THE ALJ'S DETERMINATION

ALJ Sauve reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 19, 2020, through December 31, 2024, the date Plaintiff last met the earning requirements to be eligible for disability benefits (*i.e.*, "the date last insured"). (AR at 19-21.) ALJ Sauve found at step two that Plaintiff suffers from the severe impairments of: status-post splenectomy and partial pancreatectomy; diabetes mellitus; idiopathic neuropathy; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder(PTSD); somatic symptom disorder ("SSD"); and cognitive disorder . . . ." , depressive disorder, lumbar spasm, and chronic pain disorder. (AR at 22.) The ALJ further found that Plaintiff's amenia was not severe because Plaintiff's treatment records indicated her amenia was managed with medication. (AR at 22.) He also determined that Plaintiff's alleged "headache disorder" was not a medically determinable impairment ("MDI"), but he considered it as a symptom stemming from a MDI. (AR at 22.)

At step three, ALJ Sauve concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 22-24.) As part of his analysis, ALJ Sauve discussed Plaintiff's January 16, 2023, and July 30, 2023, function reports. (AR at 23 (citing 343-44, 346, 373, 395-97).) In reaching his findings, the ALJ found "moderate" limitations in "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." (AR at 23.) The ALJ thus found that Plaintiff's mental impairments did not meet the criteria of Paragraph B of listings 12.04,

12.06, and 12.15 of Appendix 1 because, individually or collectively, they did not cause at least two "marked" limitations or one "extreme" limitation, but only four "moderate" limitations. (AR at 22-23.) ALJ Sauve also found that Plaintiff's mental impairments did not meet the criteria of "paragraph C" of listings 12.04, 12.06, and 12.15 of Appendix 1 because "the evidence fails to establish the presence of the 'paragraph C' criteria." (AR at 23.)

At step four, in determining Plaintiff's residual functional capacity ("RFC"),[2] ALJ Sauve stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR at 24.) The ALJ then discussed portions of Plaintiff's testimony pertaining to her alleged subjective symptoms and daily activities related to her diabetes and physical limitations. (AR at 24-25.) With respect to her mental health, the ALJ noted Plaintiff testified she had memory loss, isolates herself from other people, and suffers from "social anxiety due to incontinence caused by her diabetes mellitus." (AR at 24-25.) The ALJ did not summarize Plaintiff's subjective symptoms testimony related to her purported pain and/or SSD.[3] (*See generally* AR at 24-25.) ALJ Sauve then concluded that although "[Plaintiff's] [MDIs] could reasonably be expected to cause the alleged symptoms[,]

---

2 A person's residual functional capacity is "the most [the person] can still do" despite physical and/or mental limitations caused by the person's impairment(s). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
3 SSD is a mental disorder characterized as:

> physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience. These disorders may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed. Symptoms and signs may include, but are not limited to, pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or deafness.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(B)(6)(a).

. . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR at 25.) ALJ Sauve did not further explain which portions of Plaintiff's testimony regarding her symptoms he found to be consistent or inconsistent with the medical evidence or "other evidence." (AR at 24-25.) Rather, the ALJ summarized the objective medical evidence and medical opinion evidence. (AR at 25-30.) ALJ Sauve concluded Plaintiff retained "the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)" with the following additional limitations:

> [S]he can have frequent, but not constant, exposure to hazards such as unprotected heights and moving mechanical parts; she can understand, remember, and carry out simple instructions, make simple decisions, and make simple judgments; she can attend and concentrate for two-hour periods at a time; she can adapt to occasional changes in a work setting; she can have frequent interactions with supervisors; and she can have occasional interactions with coworkers and the public.

(AR at 24.)

The ALJ determined Plaintiff had past relevant work ("PRW") as a home attendant, however, she was unable to perform her PRW because it exceeded her RFC. (AR at 30-31.) At step five, ALJ Sauve found Plaintiff could perform the representative jobs of industrial cleaner, sweeper/cleaner industrial, and laborer stores, as well as light occupations including, cleaner/housekeeping, merchandise marker, and assembler small parts I, all of which he found existed in significant numbers in the national economy. (AR at 31-32.) Thus, the ALJ concluded Plaintiff had not been under a disability from July 19, 2020, through the date of the decision. (AR at 32-33.)

## IV. DISCUSSION

Plaintiff claims that remand is warranted for three reasons: (1) the RFC is not based on

substantial evidence because the ALJ failed to account for her subjective allegations of diabetes and wholly disregarded her severe impairment of SSD, (Doc. 11 at 4-12); (2) the ALJ did not properly evaluate the opinions of Robert Krueger, Ph.D., Samir Kassicieh, D.O., and Abeer Hassan, Ph.D., (*id.* at 12-24); and (3) the ALJ erroneously relied upon Myles Friedland, Ph.D.'s, the Social Security Administration's (the "Agency") non-examining consultant, inconsistent findings, (*id.* at 24-27.) The Commissioner disputes each assertion. (*See generally* Doc. 17.) The Court finds that the ALJ failed to adequately consider symptoms and limitations related to Plaintiff's diabetes and SSD in formulating her RFC. The Court does not address the other arguments, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**A. The Parties' Arguments Regarding the ALJ's Subjective Symptom Analysis**

Plaintiff posits that the ALJ committed reversible error in analyzing Plaintiff's subjective symptom evidence as it pertains to Plaintiff's severe MDIs of diabetes and SSD in determining her RFC. (Doc. 11 at 4-12.) Plaintiff asserts that even though ALJ Sauve found that her MDIs "could reasonably be expected to cause the alleged symptoms," the ALJ's conclusion that Plaintiff's statements regarding her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" did not clearly articulate the reasons the ALJ relied upon to reach his conclusion. (Doc. 11 at 5, 11-12.) In particular, ALJ Sauve did not reference or cite to his step three discussion of Plaintiff's AFRs in his subjective symptom analysis. (Doc. 11 at 5 (*comparing* AR at 23, *with* AR 24-25).) Similarly, he did not link or connect the relevant subjective symptom factors in his persuasiveness assessment of the objective medical evidence. (Doc. 11 at 7-9.) Nor did the ALJ, at a bare minimum, discuss her

subjective physical and mental limitations pertaining to SSD. (Doc. 11 at 9-11.) Plaintiff hence argues that ALJ did not apply the correct legal standard because he did not evaluate "*all*" evidence when determining whether subjective complaints were consistent with the record. (Doc. 11 at 11.) Consequently, she claims the ALJ failed to connect Plaintiff's subjective symptoms alleged in her AFRs, testimony, and objective medical evidence to the RFC determination. (Doc. 11 at 5-11.)

The Commissioner counters that the ALJ sufficiently complied with the regulations because he addressed Plaintiff's AFRs at step three and, after summarizing Plaintiff's subjective symptom testimony, he referenced and tied his persuasiveness analysis of the objective medical evidence to Plaintiff's testimony pertaining to physical and mental symptoms. (Doc. 17 at 6-10, 12-18.) To that end, ALJ Sauve resolved the inconsistencies between the medical opinions as well as Plaintiff's subjective symptoms by formulating an RFC limited to medium work. (Doc. 17 at 10-11.) The Commissioner also asserts that Plaintiff's Motion is improper because (1) she asks the Court to reweigh the evidence; (2) her symptoms alone do not establish a disability; and (3) the ALJ was not required to discuss every piece of evidence he considered in evaluating her subjective symptoms. (Doc. 17 at 10-12.)

**B. Legal Standards Governing Evaluation of Subjective Symptom Evidence**

An ALJ's subjective symptom evaluations "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).[4] Still, such "deference is not an absolute rule." *See*

4 In 2016, SSA eliminated the use of the term "credibility" when describing a claimant's testimony to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 SSR LEXIS 4 at *1-*2, 2016 WL 1119029, at *1 (superseding SS 96-7p, 1996 SSR LEXIS 4). Older authorities that addressed a claimant's "credibility," *see, e.g., White*, 287 F.3d at 910, are therefore construed as referring to an individual's subjective symptom evidence.

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished)[5] (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g., Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The assessment of subjective symptom evidence is a two-step process, requiring the ALJ to first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his alleged symptoms. *See* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *3 (Mar. 16, 2016). If she so determines, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which his symptoms limit his ability to perform work-related activities. *See* 2016 SSR LEXIS 4, [WL] at *4. At this stage, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of

---

5 The Court cites *Kellams*, other unpublished decisions of the Tenth Circuit, and the district court decisions referenced in this opinion for their persuasive value unless otherwise stated.

symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*; *see also* 2016 SSR LEXIS 4 at *10, [WL] at *4-7 (elaborating on factors to consider); 20 C.F.R. § 404.1529(c) (same).

Boilerplate statements regarding the consistency of statements concerning the intensity, persistence and limiting effects of the claimant's symptoms with the medical evidence do not fulfill the ALJ's obligation to clearly articulate the reasons for an ALJ's findings; the ALJ must connect those reasons to substantial evidence. *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *Knight o/b/o J.K. v. Astrue*, No. 11-CV-0817, 2013 U.S. Dist. LEXIS 104025, 2013 WL 12333604, at *5 (D.N.M. Jan. 11, 2013); *see also Kepler*, 68 F.3d at 391 (stating that a credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings").

**C. The ALJ’s Subjective Symptom Analysis**

In supporting the determination of Plaintiff’s RFC, ALJ Sauve first offers a boilerplate statement that he “considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p.” (AR at 24.) The ALJ next states that he must first "determine[] whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (AR at 24.) Secondly, he “must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." (AR at 24.) After setting forth the legal standard, ALJ Sauve summarized a portion of Plaintiff’s administrative hearing testimony pertaining to her

physical and mental symptoms and limitations. (AR at 24-25.) Specifically, he stated Plaintiff testified that her blood glucose level ("BGL") would be "elevated at over 600 [in the morning] . . . [and] drop to 60" during the day. (AR at 24.) The symptomology related to her BGL "caused her to experience numbness in her feet, nausea, and dizziness." (AR at 24.) He also acknowledged that Plaintiff received approximately 28 hours a week of home health care, which included monitoring her diet to regulate her BGL and assisting with personal care (*i.e.*, "eating, dressing, doing her hair"). (AR at 24-25.) Plaintiff's home health care personnel was also responsible for reminding her of appointments and to take medication due to memory loss. (AR at 25.) Plaintiff further testified that she required home health care because of "numbness in her hands and legs, headaches, and blurred vision." (AR at 25.) With respect to her physical limitations, Plaintiff also testified that she needs "to change positions frequently when seated," she cannot "walk or stand more than 10 minutes," she has "difficulty lifting objects due to a locking sensation in her fingers" which "precludes her from even lifting a hairbrush." (AR at 25.) As for Plaintiff's mental limitations, he noted she "testified that she isolates from others [and she has] social anxiety due to incontinence caused by her diabetes mellitus." (AR at 25.)

ALJ Sauve then acknowledged that Plaintiff had MDIs that produce the alleged symptoms, but he found:

> The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR at 25.) In the next sentence, ALJ Sauve states that Plaintiff's medical history indicated "non-insulin dependent diabetes mellitus." (AR at 25 (citing AR at 451-56).) However, after contracting COVID-19 and a subsequent splenectomy, Plaintiff "developed poorly controlled blood sugar

levels" requiring a fast-acting insulin prescription. (AR at 25 (citing AR at 451-56, 516).) Plaintiff's physical health stabilized by November 2020, (AR at 25 (citing AR at 563)),[6] and she denied any mental health symptomatology, (AR at 25 (citing AR at 564).) He further notes that Plaintiff required "occasional adjustments" to her diabetic medication, (AR at 25 (citing AR at 553)),[7] and Plaintiff's physical and mental health was relatively stable from 2020 through 2022, (AR at 25 (citing AR at 31-45).) The ALJ's subjective symptoms analysis ends there.

**D. The ALJ Failed to Address Plaintiff's SSD after Step Two**

The Court finds that, in regard to Plaintiff's SSD, the ALJ committed reversible error in failing to make any subsequent findings after step two of the sequential evaluation. The Commissioner's regulations state that, in fashioning the RFC, the Agency "will consider the limiting effects of all your impairments . . . ." 20 C.F.R. § 416.945(e). "In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence, including the information described in § 416.929(c)." *Id.* In turn, § 416.929(c) requires the Commissioner to "consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons." 20 C.F.R. § 416.929(c)(3).

That is, after a finding of severity at step two, the ALJ is not permitted to ignore the

6 ALJ Sauve cites to page 51 of Samir Kassicieh D.O.'s progress notes from September 15, 2020, to November 17, 2020. The Court notes that page 51 is a "MA Worksheet" completed on November 18, 2020, which lists Plaintiff's personally identifiable information, her medication refill and needs, allergies, social history, and family history. (*See* AR at 563.) The page does not discuss nor infer Plaintiff's physical health was stabilized at that medical assessment.
7 AR at 553 references an "Assessment and Plan" from February 18, 2021, which states in reference to Plaintiff's diabetes, "DIAGNOSIS: Type 2 diabetes mellitus with diabetic nephropathy (E11.21). PLAN: 11/18/20: hba1c at 12.4% increased amaryl to 4 mg bld, p/l. added sirnvastatin 20, losartan 25."

impairment throughout the rest of the disability determination process. *Wells v. Colvin*, 727 F.3d 1061, 1064-65 (10th Cir. 2013). The ALJ is required to evaluate severe and non-severe impairments and, in particular, must consider the subjective symptom evidence related to the severe and non-severe impairments. 20 C.F.R. §§ 416.945(e), 416.929(c)(3); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("[A]n ALJ is required to consider all of the claimant's [MDIs], singly and in combination . . . . [T]he failure to consider all of the impairments is reversible error."). While "the mere diagnosis of an impairment does not necessarily compel a finding of disability, the regulations do require the ALJ to at least consider a demonstrated impairment throughout the disability determination process." *Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir. 2003).

It is not disputed that Plaintiff's SSD is a severe MDI. ALJ Sauve found it to be an impairment, (AR at 22), and the Commissioner does not argue otherwise in his brief, (*see generally* Doc. 17.) Therefore the ALJ was required to discuss SSD *and* to evaluate the subjective symptom evidence pertaining to it throughout the disability determination process. This, the ALJ indisputably did not do. The ALJ addressed Plaintiff's subjective symptom allegations in her AFRs at step three to determine whether Plaintiff's mental impairments met or medically equaled the criteria of Medical Listing 12.04, 12.06, and 12.15. (*See* AR at 22-23.) The ALJ failed to make any findings on Listing 12.07, which specifically pertains to SSD.[8] (*See* AR at 22-23.) The ALJ's

8 12.07 Somatic symptom and related disorders (see 12.00B6), satisfied by A and B:

A. Medical documentation of one or more of the following:
   1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
   2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
   3. Preoccupation with having or acquiring a serious illness without significant symptoms present.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
   1. Understand, remember, or apply information (see 12.00E1).

failure to not make any finding on Listing 12.07 leaves the Court unable to discern which, if any, SSD symptoms—physical (pain), mental (anxiety), or other symptoms—the ALJ found were or were not supported by the record as a whole. *See Sarabia v. Kijakazi*, 2:21-CV-01085-LF, 2023 U.S. Dist. LEXIS 53446, 2023 WL 2665555, at *4 n.6 (D.N.M. Mar. 28, 2023) (finding error in part because "the Court cannot discern from the ALJ's decision which physical symptoms the ALJ found were supported by the medical evidence, and which were not"); *Bailey v. Kijakazi*, 20-CV-1163 KK, 2021 U.S. Dist. LEXIS 237105, 2021 WL 5865614, at *10 (D.N.M. Dec. 10, 2021) (finding error because "the ALJ did not discuss all of [Plaintiff's] symptoms, and the Court does not know whether he left some of them out because he found the impairments that caused them were not medically determinable, or for some other reason"). Hence, remand is necessary for the ALJ to address Plaintiff's SSD. On this basis alone the Court could conclude its analysis, however, the Court will address the remaining subjective symptom issues to assist on remand.

**E. The ALJ Did Not Clearly Articulate the Basis for Rejecting Plaintiff's Subjective Symptom Allegations Pertaining to Her Diabetes and SSD in Formulating the RFC**[9]

The Court further finds the ALJ failed to sufficiently describe Plaintiff's subjective symptom evidence regarding diabetes and SSD and did not clearly articulate a basis for his finding

2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.07.

9 The Court has previously held that the *Luna* framework "is equivalent to the two-step process prescribed by the SSA for evaluating a claimant's statements about her pain and other symptoms." *See Maldonado v. Kijakazi*, No. 1:20-CV-01119-KRS, 2022 U.S. Dist. LEXIS 25155, at *9 n 4 (D.N.M. Feb. 11, 2022) (internal citations omitted). Thus the Court applies SSR 16-3p framework for its analysis. *See* SSR 16-3p, 2016 SSR LEXIS 4.

that Plaintiff's subjective symptom allegations were "not entirely consistent with the medical evidence and other evidence in the record." (AR at 24-25.) As noted by Plaintiff, the ALJ's summarization of Plaintiff's alleged subjective symptoms is limited to her administrative hearing testimony. (AR at 24-25.) The Commissioner does not dispute this fact. (*See* doc. 17 at 6-7.) Plaintiff posits that the ALJ's failure to describe other subjective symptom evidence, including her AFRs, relevant testimony pertaining to her SSD and diabetes, and observations by medical providers suggests that the ALJ did not consider that additional evidence in determining Plaintiff's RFC. (Doc. 11 at 5-11.) The Commissioner counters that the ALJ adequately analyzed Plaintiff's subjective symptom testimony, (doc. 17 at 6), and, although he was not required to address Plaintiff's AFRs in the RFC assessment, his discussion of the AFRs at step three eliminated any obligation to repeat his findings, (doc. 17 at 12-13 (citing *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018)). Similarly, the Commissioner maintains that the ALJ's summary and analysis of the objective medical evidence affirmatively links the subjective symptom analysis to substantial evidence. (Doc. 17 at 6-11.) The Commissioner's assertions are misplaced for three reasons.

First, Plaintiff testified thoroughly as to the intensity, persistence, and limiting effects of her symptoms purportedly stemming from SSD and diabetes. She further supported this testimony in two AFRs and her primary care taker's nonmedical opinion. Despite these nonmedical records, the ALJ generally failed to directly discuss these matters in relation to her purported subjective symptoms despite his obligation to consider them. *See* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *6. The Court recognizes that ALJ Sauve did acknowledge some of Plaintiff's testimony that limitations exist as a result of certain symptoms arising from her diabetes

impairments. (AR at 24-25.) Yet, he almost entirely failed to describe all of Plaintiff's diabetic symptoms, their alleged intensity and persistence, or the extent of the limitations that allegedly result from them. (*Cf.* AR at 24-25) (summarizing some of Plaintiff's alleged symptoms of diabetes, then summarily dismissing alleged symptoms on grounds physical and mental health stabilized and "occasional adjustment" to medication). Moreover, as addressed *supra*, the ALJ failed to conduct any discussion pertaining to Plaintiff's SSD symptoms. (*Id.*)

For example, at the administrative hearing, Plaintiff testified that her diabetes was not successfully managed and she encountered issues with her diabetes "[e]very day." (AR at 50.) Her diabetes required she take two to three restroom breaks when traveling to appointments. (AR at 55.) Plaintiff further testified that she suffered from memory loss, forgetfulness, and her "crying spells and anxiety" were "getting worse." (AR at 51, 53, 56.) Plaintiff further testified that her blurry vision caused headaches and affected her ability to concentrate. (AR at 57.) Meanwhile, her back pain impacted her ability to sit for extended periods of time. (AR at 56-57.) Plaintiff's AFRs, which were completed by her primary caretaker, stated she suffered from confusion, headaches, fatigue and dizziness that impacted her ability to manage her finances, walk, attend appointments or shop independently, and focus. (AR at 344-45, 394-96.) Her pain impeded her from cooking, performing household chores, and independently performing any personal care. (AR at 343, 391-93.) She further claimed that she struggled to follow written and oral instructions and to complete tasks. (AR at 346.)

A review of the objective medical evidence appears to support her allegations of subjective symptoms. (*See, e.g.,* AR at 494-494-95, 504, 509, 524, 526-27, 533-34, 541, 548, 553-54, 560-61, 714-15, 727-31, 746-47, 752-53, 762, 764, 771, 797, 791-92, 803-06, 818 (diabetes

uncontrolled from September 2020 to July 2024, despite repeated medication adjustments resulting in physical and mental symptoms). The objective medical evidence is also ripe of discussions of Plaintiff's SSD symptoms. (*See* AR at 580-82 (diagnosed with SSD on July 21, 2021, noting "predominant pain"), AR at 567, 656 (in 2022, Plaintiff observed as "tearful and cried multiple times" and endorsed daily anxiousness and nervousness as well as, "being unable to stop worrying and worrying about different things . . . and constantly feeling afraid that something bad is going to happen."), AR at 656 (diagnosed with "pain and other abnormalities of sensation"),[10] AR at 714 (reported "radiating pain" in both legs), AR 721-22 (in 2023, diagnosed with "[s]omatic [s]ymptom disorder, persistent, with variable pain up to predominant, moderate severity after presenting with "a pessimistic and dysphoric mood" and found somatic centering based on Plaintiff's "persisting, variable and up-to-predominant pain in hands, arms, and legs" and occasional headaches.))

Despite this testimony and nonmedical evidence, ALJ Sauve dismissed the subjective symptoms with an overarching statement that Plaintiff's physical and mental health was generally stabilized during the relevant period. (AR at 25.) In support of his conclusion, the ALJ cited two progress notes. (*See* AR at 25 (citing Exhibit B3F, p. 51-52).) The Court acknowledged *supra* that one of the pages the ALJ relied upon did not discuss nor infer Plaintiff's physical health was stabilized at that medical assessment. Moreover, the ALJ downplayed Plaintiff's repeated diabetic medication adjustments, omitted any discussion of her SSD symptoms, and mischaracterized her

10 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(B)(6)(a) (characterizing SSD as "physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder . . . . may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed. Symptoms and signs may include, but are not limited to, *pain and other abnormalities of sensation*, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status . . . .")(emphasis added).

incontinence symptoms. (*Compare* AR at 25 *with* 494-494-95, 504, 509, 524, 526-27, 533-34, 541, 548, 553-54, 560-61, 714-15, 727-31, 746-47, 752-53, 762, 764, 771, 797, 791-92, 803-06, 818.) This was improper and warrants remand. *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987). Remand for further proceedings is also required because the Court cannot determine that the ALJ considered both the objective medical evidence and subjective symptom evidence relating to her SSD and diabetes to determine Plaintiff's RFC or made a credibility determination that is closely and affirmatively linked to substantial evidence. *Blea*, 466 F.3d at 915; *Kepler*, 68 F.3d at 391.

Second, the Commissioner is correct that an ALJ is not specifically required to "discuss [a claimant's AFRs] during the RFC assessment." (Doc. 17 at 12.) Nevertheless, the regulations are clear than an ALJ is required consider all nonmedical evidence including a plaintiff's statements of her symptoms. *See* 20 C.F.R. §§ 416.945(e), 416.929(c). An ALJ is further required to discuss "the uncontroverted evidence he chooses not to rely upon" and "significantly probative evidence he rejects." *See Clifton*, 79 F.3d at 1010. Moreover, an ALJ must "set[] forth the specific evidence he relies on in evaluating the claimant's [subjective symptom evidence]." *Keyes-Zachary*, 695 F.3d at 1167. Plaintiff's allegations as to the frequency and degree of her mental (anxiety), physical (pain), and other symptoms, as well as the efficacy of her medications (*i.e.*, changes to her insulin prescription and regimen) are arguably uncontroverted and find facial support in the objective medical record. The Court also recognizes that some of Plaintiff's subjective symptoms allegations might be reasonably construed as running counter to the objective medical record. (*See* AR at 25.) This discrepancy only highlights the need for ALJ Sauve to discuss those allegations before explaining why he rejects them specifically in his subjective symptom analysis. *See Clifton*, 79

F.3d at 1010. The ALJ's blanket statement that Plaintiff's subjective symptoms are not consistent with the record "for the reasons explained in this decision" with no further elaboration does not satisfy this standard under the circumstances. (AR at 25.)

Third, it is well established that a contemporaneous discussion of medical evidence is not mandatory when an ALJ previously discusses the medical evidence *and* then later *cites* to that medical evidence when determining the persuasiveness of a medical opinion. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012). Indeed, this Court has held no error when the ALJ clearly cited, referred back to, or directed the reviewer to the previously discussed medical evidence in his/her persuasive analysis of the medical opinions. *See Marianne R.T. v. O'Malley*, No. 1:23-CV-00216-KRS, 2024 U.S. Dist. LEXIS 46649, at *22 n.4, 2024 WL 1140933 (D.N.M. Mar. 15, 2024); *Martinez v. Kijakazi*, No. 1:20-CV-00877-KRS, 2021 U.S. Dist. LEXIS 246693, at *11, 2021 WL 6112615 (D.N.M. Dec. 27, 2021); *Carrillo v. Saul*, No. 1:19-CV-00292-KRS, 2020 U.S. Dist. LEXIS 193345, at *15, 2020 WL 6136160 (D.N.M. Oct. 19, 2020).

The Commissioner directs the Court to *Web v. Comm'r, SSA*, 750 Fed. Appx. 718, 720-21 (10th Cir. 2018) for the proposition that an ALJ's earlier summarization of relevant evidence need not be repeated when weighing an opinion. (Doc. 17 at 12.) In *Webb*, the plaintiff challenged the controlling weight the ALJ gave to the treating physician's opinion on procedural grounds because the ALJ generally referenced medical records that were "all discussed above." *Id.* at 720. Specifically, in explaining the "little weight" he afforded the opinion, the ALJ stated, ". . . it appears that the limitation was based on [Mr. Webb's] subjective report rather than on objective evidence, as Dr. Puziss's records, and those of others, *all discussed above* . . . ." (*Id.*) (emphasis added). The Tenth Circuit held that, in that case, the Court could easily determine what

inconsistencies the ALJ relied upon because he addressed all of the medical records "earlier in the decision." *Id.* at 721. *Webb*, like *Endriss* and this Court's prior holdings, was limited to an ALJ's discussion of the medical evidence followed by his/her medical opinion analysis. None of the cases pertained to whether an ALJ may rely upon his/her medical opinion analysis to satisfy his/her subjective symptoms analysis obligation. And the Commissioner has not proffered any precedent thereto. Moreover, the Court is not willing to extend *Webb* because the regulations set different requirements for the subjective symptom assessment and a medical opinion analysis. *Compare* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *3 (Mar. 16, 2016) *with* 20 C.F.R. § 404.1520c (Sept. 22, 2026). The Court thus finds that although the ALJ described some of the objective medical evidence at a later point in his decision, it is not clear that he considered the objective medical evidence and Plaintiff's nonmedical evidence related to her physical and mental impairments. The Court must thus remand in the absence of a close and affirmative link to substantial evidence in the record. *See Clifton*, 79 F.3d at 1010.

On remand, the ALJ should make clear his consideration of the relevant factors outlined in SSR 16-3p, 2016 SSR LEXIS 4 and in controlling Tenth Circuit decisions, including Plaintiff's own statements concerning "the frequency and duration of the symptoms, . . . the impact of the symptoms on the ability to perform daily living activities[,] . . . activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms." *See* SSR 16-3p, 2016 SSR LEXIS 4 at *15, 2017 WL 5180304, at *6. To the extent that the ALJ continues to find that the record is inconsistent with Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, he should explain why this is the case, making sure to "closely and affirmatively link[]" his determination to substantial evidence of

record. *Kepler*, 68 F.3d at 391.

## V. CONCLUSION

The ALJ erred in his review of Plaintiff's application for DIB and SSI by failing to properly evaluate Plaintiff's subjective symptom evidence pursuant to controlling legal standards. Therefore, Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, (Doc. 11), is **GRANTED**, and the Court remands this case back to the Commissioner for proceedings consistent with this opinion.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE